WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pedro Arteaga-Salas,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | CIV 13-2565-PHX-JAT (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT COURT:

Petitioner Pedro Arteaga-Salas, who is confined in the Arizona State Prison Complex-San Luis, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 8) and, despite having an opportunity to do so, Petitioner has not filed a traverse.

## BACKGROUND[1]

The presentence report provides the following factual background:

> On August 10, 2003, [Petitioner] fired three to five gunshots; killing David [Y.] and wounding Juan [I.], after he and the victims became involved in a verbal altercation in the parking lot of El Grand Mercado Park and Swap. [David] was shot in the face and died as a result of gunshot. [Juan] was shot once in his back and once on the back of his arm. [Juan] was transported to the hospital where he told police he and David confronted [Petitioner] and a passenger after [Petitioner] cut off David as they entered the parking lot of the park and swap.

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 8 – Respondents' Answer.

> After shooting both victims, [Petitioner] fled in his vehicle for a short distance, he jumped a barbed wire fence and hid in a lumberyard next to a park and swap. An off-duty Maricopa County Sheriff's Office police officer observed [Petitioner], who was the sole occupant of the vehicle, jump into the lumber yard with a gun in his possession. Although police did not find [Petitioner] during the initial search using an air unit and a search dog, a Phoenix police officer subsequently found [Petitioner] hiding in the lumber yard after he was searching for the weapon. With the assistance of a search dog, [Petitioner] was taken into custody and the weapon was also recovered.

(Exh. G at 1.)

Petitioner was separately indicted for aggravated assault and second-degree murder under different cause numbers. (Exhs. A, B.) The State's motion to consolidate the offenses for trial was granted by the trial court. (Exhs. C, D.)

On May 5, 2004, Petitioner pleaded guilty to aggravated assault and the lesser-included offense of manslaughter.[2] (Exhs. E-F, GG; Doc. 1, Attach. I.) In exchange for Petitioner's guilty pleas, the State agreed not to file any further charges arising from the police report for this incident. (Exh. GG at 11; Doc. 1, Attach. I.) The parties stipulated to the sentencing range of 5 to 15 years' imprisonment for the aggravated assault charge, and the range of 7 to 21 years' imprisonment for the manslaughter charge. (Exh. GG at 8; Doc. 1, Attach. I.) The parties also agreed that the sentences would run concurrently. (Exh. GG at 8-9; Doc. 1, Attach. I.) In the plea agreements, Petitioner agreed to "waive[] and give[] up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement." (Doc. 1, Attach. I.)

The trial court conducted a plea colloquy with Petitioner, confirming he understood the terms of the agreement and the constitutional rights he was waiving by pleading guilty. (Exh. GG at 3-18.) Petitioner's attorney provided a factual basis for each charge, and Petitioner agreed that it was "true." (Id. at 15-17.) The trial court found that Petitioner had "knowingly, intelligently, [and] voluntarily" pleaded guilty to both charges. (Id. at 17.)

---

[2] Petitioner signed two separate plea agreements for the separate charges. (Doc. 1, Attach. I.) The pleas were entered the same day at the same hearing. (Exhs. E, F, GG.)

- 2 -

At sentencing, the parties entered into an additional agreement, which was added as an addendum to both plea agreements. (Exh. H; Doc. 1, Attach. A at 3-8.) In the addendum, Petitioner "consent[ed] to judicial factfinding by a preponderance of the evidence as to any aspect or enhancement of sentence" and that "[i]n making the sentencing determination, the court is not bound by the rules of evidence." (Exh. H.) The addendum also provided that Petitioner understood that he was also "waiving and giving up [his] right to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range" stated elsewhere in the plea agreements. (Id.)

The trial court explained that after Petitioner pleaded guilty, there was a change in the law and that the addendum provided that by pleading guilty, Petitioner also "gave up [his] right to have the jury determine whether or not there are aggravating factors in this case that are sufficient to impose a sentence that is in excess of the presumptive sentence." (Doc. 1, Attach. A at 4.) The trial court again explained the range of sentences as provided in the plea agreement. (Id. at 4-5.) The trial court confirmed that Petitioner signed and understood the agreement. (Id. at 5-7.) The court also explained it was inclined to find aggravating circumstances, and confirmed Petitioner still wanted "to go ahead." (Id. at 6-7.) Petitioner said, "Yes." (Id. at 7.)

The trial court considered the presentence report, the State's sentencing memorandum, and submitted letters. (Id. at 8-9.) The trial court also heard argument from both parties and statements from Petitioner and other interested parties. (Id. at 9-17.) The trial court found mitigating Petitioner's lack of criminal history and his remorse. (Id. at 17-18.) With regard to aggravation, the trial court said:

> On the aggravating side, there is aggravation. There were two victims here. They were shot at close range with a weapon. Somebody's dead over a traffic altercation. Somebody lost their temper over somebody being cut off in traffic and a human being winds up dead and children wind up without a father and wife ends up without a husband, a young man, and another person gets shot over a traffic altercation.
>
> These victims were unarmed. Whatever response they had to the situation, they were unarmed. There was no justification whatsoever for what happened here. [Petitioner] did attempt to elude the police and hide and there is a surviving family that is severely impacted by the loss of their father and husband. All of

those things are aggravating. I do think an aggravated sentence is appropriate in this case.

(Id. at 18-19.) The trial court imposed an aggravated sentence of 13 years' imprisonment for the aggravated assault charge, to run concurrently with an aggravated sentence of 18 years' imprisonment for the manslaughter charge.[3] (Id. at 19-20; Exhs. I-K.)

On August 2, 2004, Petitioner timely commenced his first "of-right" PCR proceeding by filing two PCR notices – one for each cause number. (Exhs. L, M.) The trial court appointed counsel. (Exh. N.) Appointed counsel filed a motion to withdraw based on a conflict of interest, and the trial court granted the motion and appointed new counsel. (Exhs. O-Q.) This counsel filed a notice under both cause numbers stating that she "extensively reviewed the record and ha[d] determined that there are no colorable claims which can be raised on [Petitioner]'s behalf in post-conviction proceedings as expressly provided for in Rule 32." (Exhs. R, S.) Counsel also requested additional time for Petitioner to file a pro per petition, which was granted by the trial court. (Exhs. R-T.) Petitioner had until December 6, 2004 to file a PCR petition. (Exhs. T, U.) Because he did not file a petition, the trial court dismissed the Rule 32 proceeding on December 22, 2004. (Exh. U.)

Petitioner commenced his second PCR proceeding by filing a notice on December 13, 2010, listing both cause numbers. (Exh. V.) He checked boxes stating he was raising a claim of "[n]ewly discovered material facts exist which probably would have changed the verdict or sentence, a claim that "[t]here has been a significant change in the law that would probably overturn the conviction or sentence," and a claim that "[f]acts exist which establish by clear and convincing evidence that the defendant is actually innocent." (Id. at 2-3.) Petitioner provided the following explanation for his claims:

> Petitioner is not an English speaking individual, he is a layman of this law and only recently Petitioner found that one of the alleged victims had violent tendencies, that there was a warrant for his arrest, that he was using a fake name and that he was about to flee to Mexico. There is witness that saw the two alleged victims yelling obscenities and insults running after Petitioner['s]

---

[3] One of the sentencing minute entries contained an error that was fixed by a subsequent nunc pro tunc order. (Exhs. I, K.)

- 4 -

> vehicle. The surviving victim admit [sic] to beating the passenger of that vehicle.

(Id. at 3.)

In a minute entry, the trial court first noted that this was Petitioner's "second Rule 32 proceeding and it ha[d] been filed in an untimely manner." (Exh. W at 1.) The trial court reviewed each of the claims from the PCR notice and found Petitioner "fail[ed] to state a claim for which relief can be granted in an untimely Rule 32 proceeding." (Id. at 2.) Thus, the trial court dismissed the untimely PCR notice. (Id.)

On January 21, 2011, Petitioner commenced a third PCR proceeding by filing a PCR notice, listing both cause numbers.[4] (Exh. X.) He checked the same three boxes, raising the same three claims he raised in the second PCR notice. (Id. at 2-3.) He also provided explanations for his claims, including: (1) he "recently learned from another inmate" that one of the victims "was the subject of an arrest warrant," and (2) blood samples were taken from different sections of interior of his vehicle and he does not have a result of the testing, and he argued the evidence may have "changed the verdict or sentence" and "would establish [he] is actually innocent." (Id. at 3-4.)

On February 1, 2011, the trial court dismissed the PCR notice. (Exhs. Y, Z.) First, it noted that this was Petitioner's third PCR proceeding and had been "initiated in an untimely manner." (Id. at 1.) The court also noted that Petitioner's claim under Rule 32.1(e) of newly discovered material facts had been previously raised in the second PCR notice, and had been dismissed for failure to meet the requirements under that rule. (Id. at 1-2.) The court found that Petitioner again failed to meet the requirements under Rule 32.1(e). (Id. at 2.) It also found the claim "precluded as it has already been raised and decided by the Court," citing Rule 32.2(a)(2). (Id.) Because Petitioner "fail[ed] to state a claim for which

---

[4] Petitioner attached an unsigned copy of this PCR notice to his habeas petition as Attachment C. (Doc. 1, Attach. C.) Respondents provided the Court with a signed copy that was filed with the state court. (Exh. X.) Petitioner also attached a copy of a petition for post-conviction relief as Attachment D. (Doc. 1, Attach. D.) It does not appear Petitioner filed this PCR petition with the state court. (Exhs. HH, II.)

- 5 -

1 relief can be granted in an untimely Rule 32 proceeding," the court dismissed the PCR notice. (Id.)

On February 25, 2011, Petitioner filed a petition for review in the Arizona Court of Appeals.[5] (Exh. AA.) He presented the following issue for review: "Did the superior court abuse[] its discretion when [it] dismissed [Petitioner's] notices of post-conviction relief and precluded a claim of newly discovered evidence." (Id. at 2.) The State responded, arguing the trial court properly dismissed the third PCR notice because "[t]he evidence Petitioner claims he would present at a hearing does not meet the criteria for newly discovered evidence and does not show that a reasonable fact-finder would not have convicted him." (Exh. BB.) Petitioner filed a reply. (Exh. CC.) The Arizona Court of Appeals summarily denied review on December 4, 2012. (Exh. DD.)

On January 4, 2010, Petitioner filed a special action petition in the Arizona Court of Appeals. (Exh. KK; Doc. 1, Attach. F.) He raised the following issue: "[The trial court] imposed a sentence in violation of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) [and] Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004)." (Doc. 1, Attach. F at 2.) Specifically, he argued that the trial court "deprived [him] of the opportunity to require that a jury find facts sufficient to expose him to a sentence greater than the presumptive in violation of the Sixth Amendment of the United States Constitution." (Id.) The Arizona Court of Appeals declined to accept jurisdiction of the special action petition. (Doc. 1, Attach. G.)

Petitioner filed a petition for review from the denial of his special action petition in the Arizona Supreme Court, raising two issues: (1) the trial judge abused its discretion "by imposing a sentence greater than the statutory maximum authorized by law in violation of the Sixth Amendment of the United States Constitution," citing Blakely, and (2) the "Court

---

[5] Petitioner attached an unsigned copy of his petition for review to the Arizona Court of Appeals to his habeas petition as Attachment E. (Doc. 1, Attach. E.) Respondents provided the Court with the signed copy that was filed with the Court of Appeals. (Exh. AA.)

1  of Appeals decision is a denial of Due Process and the right to access the court in violation
2  of the Fifth and Fourteenth Amendments of the Constitution of the United States." (Doc. 1,
3  Attach. H.) The Supreme Court summarily denied the petition for review. (Exh. LL; Doc.
4  1, Attach. H.)

5  On January 10, 2013, Petitioner also filed a special action petition in the trial court,
6  listing both cause numbers. (Exhs. EE, HH, II.) It appears to be identical to the special
7  action petition filed in the Arizona Court of Appeals. (Exh. EE; Doc. 1, Attach. F.) In a
8  minute entry, the trial court noted it "lack[ed] jurisdiction to consider Special Actions," and
9  construed the document to be Petitioner's fourth PCR notice. (Exh. FF at 1.) The court
10 found the notice was untimely and "failed to provide meritorious reasons to allow the
11 untimely filing, as required by Rule 32.2(b) of the Arizona Rules of Criminal Procedure."
12 (Id.) The court also noted that Petitioner had three prior Rule 32 proceedings and his claim
13 should have been raised in the previous proceedings. (Id. at 2.) Accordingly, his claim was
14 "procedurally precluded." (Id.) The court further found Petitioner failed to state a colorable
15 claim because he signed a plea agreement addendum where he agreed "to judicial
16 fact-finding of the evidence as to any aspect or enhancement of the sentence," and the
17 sentencing judge discussed the addendum with Petitioner "who again acknowledged his
18 agreement and understanding of the additional terms." (Id.) The court found other claims
19 raised by Petitioner were also precluded from an untimely or successive PCR notice, citing
20 Rule 32.4(a). (Id.) Because Petitioner failed to "state a claim for which relief can be granted
21 in an untimely or successive Rule 32 proceeding," the trial court dismissed the document it
22 construed as the fourth PCR notice. (Id.)

23 On December 16, 2013, Petitioner filed the instant habeas petition pursuant to 28
24 U.S.C. § 2254 raising one grounds for relief. (Doc. 1.) Petitioner claims that the sentencing
25 court imposed a sentence in violation of the Fourteenth and Sixth Amendments of the United
26 States Constitution by making its own finding of aggravating factors.

**DISCUSSION**

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and, as such, must be denied and dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

An "of-right" petition for post-conviction review under Arizona Rule of Criminal Procedure 32, which is available to criminal defendants who plead guilty, is a form of "direct review" within the meaning of 28 U.S.C. § 2244(d)(1)(A). See Summers v. Schriro, 481 F.3d 710, 711 (9th Cir. 2007). Therefore, the judgment of conviction becomes final upon the conclusion of the Rule 32 of-right proceeding, or upon the expiration of the time for seeking such review. See id.

Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is

- 8 -

1  not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When
2  a postconviction petition is untimely under state law, 'that [is] the end of the matter'" for
3  purposes of § 2244(d)(2)." Id. at 414.

4       In Arizona, post-conviction review is pending once a notice of post-conviction relief
5  is filed even though the petition is not filed until later. See Isley v. Arizona Department of
6  Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief
7  is also pending during the intervals between a lower court decision and a review by a higher
8  court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold,
9  536 U.S. 214, 223 (2002)). However, the time between a first and second application for
10 post-conviction relief is not tolled because no application is "pending" during that period.
11 See id. Moreover, filing a new petition for post-conviction relief does not reinitiate a
12 limitations period that ended before the new petition was filed. See Ferguson v. Palmateer,
13 321 F.3d 820, 823 (9th Cir. 2003).

14      The statute of limitations under the AEDPA is subject to equitable tolling in
15 appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for
16 equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights
17 diligently and (2) that some extraordinary circumstances stood in his way'" and prevented
18 him from filing a timely petition. Id. at 2562 (quoting Pace, 544 U.S. at 418).

19      The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely.
20 Petitioner was sentenced under the plea agreement on July 28, 2004, and commenced his
21 timely Rule 32 of-right PCR proceeding on August 2, 2004. (Doc. 1, Attach. A, I; Doc. 8,
22 Exhs. E, F, I, J, L.) Although he was given additional time, Petitioner failed to file a PCR
23 petition, and the trial court dismissed the PCR proceeding on December 22, 2004. (Exhs. T,
24 U.) Petitioner did not file a petition for review from this summary dismissal in the Arizona
25 Court of Appeals or the Arizona Supreme Court. Thus, Petitioner's state court conviction
26 became final on January 21, 2005 – 30 days after the state court dismissed the PCR
27 proceeding, because the statute was tolled during the time he could have filed a petition for
28 review in the Arizona Court of Appeals. See Ariz.R.Crim.P. 32.9(c) ("Within thirty days

1 after the final decision of the trial court on the petition for post-conviction relief or the
2 motion for rehearing, any party aggrieved may petition the appropriate appellate court for
3 review of the actions of the trial court."). The statute of limitations began to run on January
4 21, 2005 – and expired one year later – on January 23, 2006.[6]

Petitioner's subsequent PCR proceedings and his special action petition were all filed after the limitations period had expired (Exhs. V, X, EE; Doc. 1, Attach. F), and, thus, did not toll the limitations period. See Ferguson, 321 F.3d at 823 ("[S]ection 2244(d) does not permit the re-initiation of the [federal 1-year] limitations period that has ended before the state petition was filed."). Further, the state court specifically found that the successive PCR notices were not timely filed; thus, they were not "properly filed" and did not toll the 1-year statute of limitations. (Exhs. W, Y, Z, FF.) See Pace, 544 U.S. at 414 (finding that post-conviction proceeding that is rejected by state courts on timeliness grounds is not "properly filed" under 28 U.S.C. § 2244(d)(2)).

In sum, Petitioner filed the instant habeas petition well over 7 years after the 1-year limitations period expired. The Petition is therefore untimely.

The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v.

---

[6] The end date fell on Saturday, January 21, 2006. Thus, the statute of limitations expired on Monday, January 23, 2006.

- 10 -

Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

Petitioner has not proffered any extraordinary circumstance that would justify equitable tolling or demonstrated that an external impediment hindered the diligent pursuit of his rights. And, Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

Accordingly, Petitioner is not entitled to equitable tolling and his habeas petition is untimely.

**CONCLUSION**

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

\\\
\\\

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 17th day of July, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge